CONNECTICUT MUTUAL LIFE INSURANCE COMPANY *vs.* CHARLES F. BALDWIN, Administrator, *et als.*

F. took out a life insurance policy payable to M. and the children of F. When F. took the policy out, M. was his wife, and he had four children living by a former wife. Subsequently a child was born to F. and M. Afterwards F. and M. transferred their right, title, and interest in the policy by an unsealed instrument, signed by them, as collateral security for a debt of F., and the instrument and the policy were delivered to the creditor. No question was made as to the validity of the transfer.

On a bill of interpleader brought by the insuring company after the deaths of F. and M., —

*Held,* that the policy was an executed, irrevocable, voluntary settlement in favor of the wife and the children in being when it was taken out.

*Held,* further, that F. and M. could pledge or assign the policy to the extent of their interests in it.

*Held,* further, the policy being for $5,000, that one fifth of this amount was due to the creditor, and one fifth to each of the four children.

*Held,* further, one of the four children having died a minor before F., that the one fifth due this child should be paid to his legal representative, if any, and if none, to the administrator of F., the child's father, and next of kin.

BILL OF INTERPLEADER.

*July* 18, 1885. DURFEE, C. J. This is a bill of interpleader, the object of which is to ascertain the rights of the interpleading parties in the sum of $5,000, insurance money, payable under a policy on the life of William S. Fifield. The policy was issued by the complainant, a Connecticut corporation, January 26, 1865. The premiums, which were to be paid in ten years, were all paid by William S. Fifield, the last on January 26, 1874. The agreement of the company was as follows, to wit: "The said company do hereby promise and agree to and with the said assured, his executors, administrators, and assigns, well and truly to pay or cause to be paid, at the city of Hartford, the said sum insured to the said assured, his executors, administrators, and assigns, ninety days after due notice and proof is given of the death of the said William S. Fifield, for the benefit of, and payable to, Mary T. Fifield and the children of the said William S. Fifield, deducting therefrom all indebtedness for premiums unpaid at that date." At the time the policy issued William S. Fifield had a wife, to wit, Mary T. Fifield, named in the policy, and four children by a former wife. On March 17, 1867, a son was born to said William S. and Mary T. Fifield. On March 1, 1875, the said William S. and Mary T. delivered said policy to the Fifth National Bank

under the following instrument, namely : " Providence, March 1, 1875. In consideration of the sum of one dollar to us in hand paid, and for other valuable consideration, we hereby assign and set over all our right, title, and interest in policy No. 42,778 in the Connecticut Mutual Life·Insurance Company of Hartford, to A. G. Stillwell, cashier of the Fifth National Bank of Providence, R. I." The instrument was signed by William S. and Mary T., but was not under seal. The instrument and policy were delivered as collateral security for an indebtedness of about $8,000 from William S. to the bank, by promissory notes, which were subsequently paid in part by said William S. No consideration moved to the separate estate of Mary T. One of the older children died July 22, 1877 ; Mary T. died intestate in August, 1884 ; William S. died October 18, 1884.

No question is made in regard to the validity of the contract. The principal question is whether the bank is entitled to all or any part of the insurance money. We see no reason why it was not competent for William S. and Mary T. to pledge or assign the policy to the extent of their interests in it,[1] nor why such pledge was not effected by the delivery of the policy and instrument, however it might have been if only the instrument had been delivered. The question then is, Did the pledgors have any interest which passed by the pledge, and if so, what ? On the one hand, the contention is that the entire policy passed, and if not, the interest of Mary T. at least. On the other hand, the claim is that only the interest of Mary T. could have passed in any event, but that, she having died before the assured, nothing passed, her interest being contingent on her surviving him. In support of the latter position the case of the *Connecticut Life Ins. Co.* v. *Burroughs,* 34 Conn. 305, is cited. But there the policy was by its terms payable to the wife, or, if she died before the insured, to her children. The interest was clearly contingent. The policy here contained no words of contingency. It is argued that it necessarily imports contingency, because it was intended as a family provision. We do not think that is clear. The child that died might have died leaving children, in which event it could not

---

[1] See *Clark* v. *Allen,* 11 R. I. 439.

have been intended that the surviving children of the assured should take all to their exclusion. The policy was expressed to be for the benefit of " Mary T. Fifield and my children." If the policy had been expressed to be for the benefit of " Mary T. Fifield and my *four* children," we think there can hardly be a doubt that Mary T. and the four children would have taken each a vested fifth, payable at the death of the assured. It is said, in May on Insurance, " If the policy when issued expressly designates a person as entitled to receive the insurance money, such designation is conclusive, unless some question arises as to the rights of the creditors of the person who paid the premium and procured the insurance." May on Insurance, § 317. It has been said of a policy similar to the policy here, that the taking of it " was in the nature of an irrevocable and executed voluntary settlement upon the wife and children." *Ricker* v. *Charter Oak Life Ins. Co.* 27 Minn. 193, 196. We think this is sound law. It follows, it seems to us, that the policy, when issued, vested in the wife and children then in being the $5,000, to be paid at the death of the assured, *i. e.* one thousand dollars to each of them. This construction is open to the objection that it excludes the after-born child. Possibly, if the policy had been expressed to be for the benefit of the children only, the doctrine in respect of testamentary bequests to children payable *in futuro*, namely, that the bequests are payable to them as a class, and that the class will open to let in after born children to participate in the bequests, might be applied. 5 Jarman on Wills, 5th Am. ed. 704 and note 11. But, even if this doctrine of the law of wills can ever be applied to this sort of family provision, we are not prepared to apply it here ; for here the beneficiaries are not a single class, the children only, but the wife and the children, and the children, for anything we can see, were intended to take *pari passu* with the wife. Construing the policy, then, as an executed and irrevocable voluntary settlement for the benefit of Mary T. Fifield and the children in being when it was issued, the question of what interest passed to the bank as pledgee is easily answered. The bank, as pledgee, is entitled to, and only to, the share of Mary T. Fifield, one fifth of the insurance money, the other four fifths being distributable as follows, to wit, one fifth to each of the three surviving children,

and the remaining fifth to the legal representative of the deceased child, if he has any legal representative; but if, on account of his having died a minor, he has no legal representative, then to the administrator on the estate of William S. Fifield, his father, and next of kin.   And see *Foster, Adm'r,* v. *Gile, Adm'r,* 50 Wisc. 603 ; *Baker, Trustee,* v. *Young,* 47 Mo. 453.

*Decree accordingly.*

*Bosworth & Champlin,* for complainant.

*Rollin Mathewson,* for respondent, the Fifth National Bank.

*Charles F. Baldwin,* for the other respondents.